# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2567

_____

| | | |
|---|---|---|
| Mamerto Davila-Mejia; | * | |
| Jefry Davila-Crispin; | * | |
| Yocisel Davila-Crispin; | * | |
| Bekyer Davila-Crispin; | * | |
| Aura Elizabeth Crispin-Vicente, | * | |
| | * | |
| Petitioners, | * | |
| | * | Petition for Review of a |
| v. | * | Final Decision of the Board |
| | * | of Immigration Appeals. |
| Michael Mukasey, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 14, 2008
Filed: July 7, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Aura Elizabeth Crispin-Vicente, Mamerto Davila-Mejia, Jefry Davila- Crispin, Yosicel Davila-Crispin, and Beyker Davila-Crispin, natives and citizens of Guatemala, petition for review of an order of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ) denial of their applications for asylum and withholding of removal. We deny the petition for review.

## I. *Background*

Petitioners, a family of five, entered the United States without inspection in June 2003. That same month, the Department of Homeland Security (DHS) commenced removal proceedings charging petitioners as aliens present without being admitted or paroled pursuant to section 212(a)(6)(A)(I) of the Immigration and Nationality Act (INA). Also in June 2003, petitioners applied for asylum based on their membership in a particular social group—competing family business owners.

The facts that underlie the asylum application are as follows. In December 1999, petitioners opened a bar in Guatemala. One year later, Francisco Paz-Perez opened a bar next door. Petitioners' asylum claims involve Paz-Perez, their business competitor. According to testimony and the asylum application, the problems started in January 2001 when two of petitioners' employees were beaten by Paz-Perez. After the employees reported the assault to the local authorities, Paz-Perez accused petitioner Crispin-Vicente of stealing money from one of Paz-Perez's employees. Petitioner Crispin-Vicente was later found not guilty of these charges after a trial. During the time of these proceedings, Paz-Perez threatened petitioners claiming that he would ruin them financially, that the children would pay, and that he would kill Crispin-Vicente.

On October 18, 2001, petitioners received a letter from Paz-Perez threatening that if they did not pay him 50,000 quetzales he would kidnap their children and burn their delivery truck. Petitioners testified that they reported this threat to the police and that the police said that they would investigate but did nothing.

Two months later, petitioner Davila-Mejia was robbed and beaten by five masked men on the highway from Guatemala City to petitioner's home in Peten. Davila-Mejia suffered similar assaults in February 2002, April 2002, September 2002, and December 2002. Davila-Mejia stated that he reported these incidents to the authorities but they "never did anything." Petitioners testified that Paz-Perez was

behind these attacks and they fear that, if removed to Guatemala, the problems would continue. Following these attacks, petitioners felt forced to close their business and Davila-Mejia found employment with a petroleum company. Petitioners subsequently left Guatemala.

On February 7, 2006, the IJ denied petitioners' application for asylum and withholding of removal. The IJ found that petitioners had not demonstrated that these alleged acts of past mistreatment perpetrated by Paz-Perez were on account of their political opinion or any of the other statutorily enumerated grounds. According to the IJ, petitioners failed to establish that they were mistreated on account of their membership in a particular social group. The record contained no evidence that any harm from Paz-Perez had been or would be motivated by an actual or imputed statutory ground. Also, the IJ denied petitioners voluntary departure because they had not been physically present in the United States for one year immediately preceding the date that they were served their Notices to Appear.

On May 31, 2007, the BIA dismissed petitioner's appeal. The BIA agreed with the IJ's conclusions for the reasons stated in the IJ's opinion. The BIA reiterated the IJ's conclusion that petitioners failed to seek asylum on the basis of any statutorily protected ground. Petitioners contended that they were targeted as business owners; however, petitioners failed to show that anyone sought to persecute them on account of any of the five factors enumerated in section 101(a)(42)(A) of the INA.

Petitioners now seek review of the orders denying their applications for asylum and withholding of removal.

## II. *Discussion*

Petitioners challenge the BIA's decision affirming the IJ's denial of their application for asylum and withholding of removal. Petitioners argue that the IJ and the BIA erred in finding that petitioners have not shown that they were persecuted, or

that they face persecution, on account of any statutorily enumerated ground. Petitioners allege that they were targeted for persecution and face future persecution based on their membership in a discrete social group—namely "competing family business owners."

We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action. *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005). "A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record." *Hassan v. Gonzales*, 484 F.3d 513, 516 (8th Cir. 2007). We must uphold an IJ's factual determinations if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id*. We review the BIA's legal determinations de novo, according substantial deference to the BIA's interpretation of the statutes and regulations it administers. *Id.*

"Any alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum . . . ." 8 U.S.C. § 1158(a)(1). To qualify for asylum, the burden is on the applicant to establish that he or she is a refugee as defined in the statute. 8 C.F.R. § 1208.13(a). Pursuant to section 101(a)(42) of the INA, a refugee is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution *on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .*" 8 U.S.C. § 1101(a)(42)(A) (emphasis added).

An applicant for asylum may prove eligibility by establishing past persecution on account of one of the statutorily enumerated grounds, and if the applicant shows past persecution, he or she will be presumed to have a well-founded fear of future

-4-

persecution. *Hasalla v. Ashcroft*, 367 F.3d 799, 803 (8th Cir. 2004). But if an applicant attempts to establish a well-founded fear of future persecution without having shown past persecution then "an alien must show the fear is both subjectively genuine and objectively reasonable. . . . To overcome the BIA's finding that [petitioner] lacked a well-founded fear of persecution, [petitioner] must show the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Ghasemimehr v. INS*, 7 F.3d 1389, 1390 (8th Cir. 1993) (internal citations and quotations omitted).

"Persecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion." *Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002). Persecution requires harsh treatment and "[l]ow-level intimidation and harassment alone do not rise to the level of persecution" nor does mere economic detriment. *Makatengkeng v. Gonzales*, 495 F.3d 876, 882 (8th Cir. 2007). "As for slurs and harassment from private individuals, these do not constitute persecution." *Rife v. Ashcroft*, 374 F.3d 606, 612 (8th Cir. 2004) (quoting *Fisher v. INS*, 291 F.3d 491, 497 (8th Cir. 2002)).

Petitioners allege that they were persecuted on account of the statutorily enumerated ground of "membership in a particular social group" of competing family business owners. The BIA construes "membership in a particular social group" to refer to persons who hold an immutable characteristic, or common trait such as sex, color, kinship, or in some cases shared past experiences. *Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985), overruled on other grounds by *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). The group characteristic must be one "that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities and consciences." *Id.*

Recently, in *Matter of A-M-E & J-G-U*, the BIA expounded on the meaning of a "particular social group." 24 I&N Dec. 69 (BIA 2007). In that case, the BIA found that respondents failed to establish that their status as affluent Guatemalans gave them sufficient social visibility to be perceived as a group by society—generally, the shared characteristic of the group should be recognized by others in the community and the group should be perceived as a group by society. *Id.* at 74. The BIA noted that respondents had not presented evidence indicating that wealthy Guatemalans were recognized as a group that is at a greater risk of crime in general or of extortion or robbery in particular. *Id.* at 74–75. Rather, the BIA found that the record reflected that violence and crime in Guatemala appear to be pervasive at all socio-economic levels and that respondents had not provided evidence that the general societal perception would be otherwise. *Id.* at 75. The BIA also found that describing the group as "wealthy" or "affluent" was too amorphous, and not sufficiently particular, to create a benchmark for determining group membership—people's ideas of what those terms mean can vary. *Id.* At 76. The BIA noted that the terms potentially encompass a large swath of people and that respondents had not demonstrated that wealthy Guatemalans constituted a particular social group. *Id.*

In this case, the BIA relied on *Matter of A-M-E & J-G-U* in affirming the IJ's finding that petitioners had not demonstrated that the alleged acts of past mistreatment by Paz-Perez were on account of any statutorily enumerated ground, including their membership in a "particular social group." We agree with the BIA and conclude that petitioners did not establish their membership in a particular social group within the meaning of the INA.

As in *Matter of A-M-E & J-G-U*, petitioners here failed to establish that their status as "competing family business owners" gave them sufficient social visibility to be perceived as a group by society. In particular, petitioners did not present evidence indicating that "family business owners" in Guatemala were recognized as a group that is at a greater risk of crime in general or of extortion, robbery, or threats in particular.

There is no record evidence that petitioners' mistreatment by Paz-Perez and being robbed and extorted are associated with petitioners being members of a social group identifiable as "family business owners." Also, under BIA precedent, the term "family business owner" is too amorphous to adequately describe a social group. We conclude that respondents have not established that the alleged acts of mistreatment by Paz-Perez were on account of their membership in a particular social group, or any of the other enumerated grounds, under the INA.

Petitioners also applied for withholding of removal, and they petition for review of the denial of that application. We conclude that the BIA did not err in denying withholding of removal.

> An alien may not be removed if the alien shows there is a clear probability that his life, or freedom would be threatened in [the alien's] country because of the alien's race, religion, nationality, membership in a particular social group or political opinion. The standard for withholding of removal, a clear probability of persecution, is more rigorous than the well-founded fear standard for asylum. An alien who fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal.

*Turay v. Ashcroft*, 405 F.3d 663, 667 (8th Cir. 2005) (internal quotations and citations omitted). Because petitioners did not meet the standard for asylum, they therefore have not met the higher standard required for withholding of removal.

### III. *Conclusion*

For the foregoing reasons, we deny the petition for review.

_____