SHEPHERD, Circuit Judge.
Oscar Alexander Granados Gaitan, a native and citizen of El Salvador, entered the United States in 2002 to escape recruitment into a gang in his home country. Gaitan now faces removal and has petitioned this Court to review the decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge’s (IJ) denial of Gaitan’s petition for asylum, withholding of removal, and relief under the Convention Against Torture. We deny the petition for review.
I.
In April 2002, Gaitan entered the United States without inspection in order to escape recruitment into the notorious gang “Mara Salvatrucha” or “MS-13.” Approximately two years earlier, when Gaitan was twelve years old, Gaitan was approached by members of MS-13 who attempted to recruit Gaitan into their gang. Gaitan refused this initial invitation as well as subsequent bids from gang members. He was never physically harmed during his interactions with MS-13. However, the gang members threatened to harm Gaitan and his family if he did not join.
On August 10, 2007, the United States Department of Homeland Security (DHS) initiated removal proceedings against Gaitan by filing a Notice to Appear with the immigration court. DHS charged Gaitan with being removable under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled. Gaitan appeared before an IJ for an individual merits hearing. In responding to the Notice to Appear, Gaitan admitted the factual allegations and conceded the charge of removability. However, Gaitan sought relief from removal in the form of asylum, withholding of removal, and under the Convention Against Torture. Gaitan claimed that he was a member of a “particular social group” composed of young males that have been previously recruited by MS-13 and are opposed to the nature of gangs. To support this claim, Gaitan testified about his experience in El Salvador and gang members’ efforts to recruit him. Gaitan also submitted written documentation regarding the ongoing struggle in El Salvador for school-aged males to resist coerced recruitment by gangs.
The IJ issued an oral decision rejecting Gaitan’s claims for relicf. The IJ found that Gaitan’s testimony was not sufficiently detailed or cohesive to make a positive credibility finding. The IJ then stated that even if Gaitan was credible, he failed to show eligibility for asylum on the basis of membership in a particular social group. In making this finding, the IJ relied heavily on the BIA’s decision in Matter of S-E-G-, 24 I. & N. Dec. 579 (BIA 2008), which the IJ found controlling in Gaitan’s case.
Gaitan appealed to the BIA. Following a single-member review, the BIA overturned the IJ’s ruling on credibility but upheld the IJ’s decision regarding the merits of Gaitan’s claims for relicf. Like the IJ, the BIA cited Matter of S-E-G- in support of its denial of Gaitan’s appeal.
II.
“[T]his court has jurisdiction of ‘constitutional claims or questions of law raised upon a petition for review.’ ” Solis v. Holder, 647 F.3d 831, 832 (8th Cir.2011) (quoting 8 U.S.C. § 1252(a)(2)(D)), cert. de *680 nied, — U.S. —, 132 S.Ct. 1032, 181 L.Ed.2d 739 (2012). “Where ... the BIA issues an independent decision without adopting the IJ’s conclusions, we review only the BIA decision.” Constanza v. Holder, 647 F.3d 749, 753 (8th Cir.2011) (per curiam). “A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record.” Hassan v. Gonzales, 484 F.3d 513, 516 (8th Cir.2007). “We review questions of law de novo but accord substantial deference to the BIA’s interpretation of immigration statutes and regulations.” Puc-Ruiz v. Holder, 629 F.3d 771, 777 (8th Cir.2010).
III.
To qualify for asylum under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., the burden is on Gaitan to show that he is a refugee, in other words, to show that he is a person who is outside the country of his nationality “ ‘who is unable or unwilling to return to, and is unable or unwilling to avail himself ... of the protection of, that country because of persecution or a well-founded fear or persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.’ ” Davila-Mejia v. Mukasey, 531 F.3d 624, 627-28 (8th Cir.2008) (quoting 8 U.S.C. § 1101(a)(42)(A)). The phrase “particular social group” is not expressly defined in the INA. Ngengwe v. Mukasey, 543 F.3d 1029, 1033 (8th Cir.2008). As a result, we give Chevron deference to the BIA’s reasonable interpretation of the phrase and will not overturn the BIA’s conclusion unless it is “arbitrary, capricious, or manifestly contrary to the statute.” Ngengwe, 543 F.3d at 1033; Chevron, U.S.A., Inc. v. Nat’l Res. Def. Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
In 1985, the BIA defined a “particular social group” as “a group of persons all of whom share a common, immutable characteristic. ... that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.” Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). The BIA subsequently expounded on the meaning of “particular social group,” finding that factors such as “social visibility” and “particularity” were relevant in determining whether a purported social group warrants protection under the INA. See In re A-M-E & J-G-U- 24 I. & N. Dec. 69, 74-76 (BIA 2007); In re C-A- 23 I. & N. Dec. 951, 957-61 (BIA 2006).
In Matter of S-E-G- 24 I. & N. Dec. at 582, the BIA further refined its definition of a “particular social group” as “requiring] that the group have particular and well-defined boundaries, and that it possess a recognized level of social visibility.” According to the BIA, “[t]he essence of the ‘particularity’ requirement ... is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons.” Id. at 585. Similarly, social visibility asks “whether the members of the group are perceived as a group by society,” such that “these individuals suffer from a higher incidence of crime than the rest of the population.” Id. at 586-87 (citation and internal quotation marks omitted).
In his petition for review, Gaitan focuses his challenge on the BIA’s finding that he was not eligible for asylum because he was *681 not a member of a particular social group.[1] Gaitan argues that our precedent does not mandate that we affirm the decision of Matter of S-E-G- because Matter of S-EG- unreasonably transformed social visibility and particularity from relevant factors to be considered into requirements that must be met to show membership in a particular social group. Gaitan asserts that these requirements are not entitled to deference by this Court because they are “conflicting, confusing, and illogical.”
At the time that he filed his appeal, Gaitan was correct that no panel of this Court had gone so far as to refer to social visibility and particularity as requirements. Yet our recent decisions in Constanza v. Holder, 647 F.3d at 753-54, and Ortiz-Puentes v. Holder, 662 F.3d 481 (8th Cir.2011), adopted such a reading. In Constanza, we denied a petition for review by a native and citizen of El Salvador who applied for asylum on the basis that he would be persecuted by MS-13 gang members because of “his membership in social groups defined as persons resistant to gang membership, persons who have returned from the United States and are perceived as affluent, and persons who fear harm to their families from gangs.” 647 F.3d at 752. The BIA rejected Con-stanza’s petition and found that his articulated social groups were “too broad and indeterminate for immigration purposes.” Id. at 752. In denying Constanza’s petition for review, we were “persuaded by the BIA’s conclusion, as well as authority from other circuits, that ‘persons resistant to gang violence’ are too diffuse to be recognized as a particular social group.” Id. at 754 (citing Matter of S-E-G-, 24 I. & N. Dee. at 588). Accordingly, we stated that “a social group requires sufficient particularity and visibility such that the group is perceived as a cohesive group by society.” Id. at 753.
Likewise, in Ortiz-Puentes, we denied a petition for review by three natives and citizens of Guatemala who claimed their social group was comprised of “young Guatemalans who refused to join gangs and were persecuted—beaten—as a result.” 662 F.3d at 483. We again noted with approval the BIA’s decision in Matter of S-E-G-, and stated that “[a] group of persons defined as those who suffer violence because they refused to join criminal gangs ‘lacks the visibility and particularity required to constitute a social group’ for purposes of 8 U.S.C. § U01(a)(42)(A).” Id. (quoting Constanza, 647 F.3d at 753-54).
We are bound by the decision of the earlier panels. Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir.2002) (per curiam) (“It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.”). As a result, this Court cannot find that the social visibility and particularity requirements articulated in Matter of S-E-G are arbitrary or capricious.
*682 In the present case, Gaitan sought relief from removal based on his membership in a particular social group that he characterized as “young males from El Salvador who have been subjected to recruitment by MS-13 and who have rejected or resisted membership in the gang based on personal opposition to the gang.” After a careful review of the record, we agree with the BIA that Gaitan’s articulated social group is not sufficiently narrowed to cover a discrete class of persons who would be perceived as a group by the rest of society. Instead, Gaitan “is no different from any other Salvadoran ... that has experienced gang violence.” Constanza, 647 F.3d at 754. Accordingly, Gaitan has failed to establish that any mistreatment by MS-13 “occurred because of his membership in a particular social group.” Id.
IV.
We deny the petition for review.

. Gaitan does not address the denial of relief under the Convention Against Torture in his brief. Any argument based on that ground is therefore deemed waived. See Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 n. 3 (8th Cir.), cert. denied, — U.S. —, 132 S.Ct. 315, 181 L.Ed.2d 194 (2011). Gaitan notes that he does not waive his claim that he is otherwise eligible for relief in the form of withholding of removal under the INA. However, “[t]he standard for withholding of removal, a clear probability of persecution, is more rigorous than the well-founded fear standard for asylum. An alien who fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal.” Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir.2005) (internal citations omitted). Because we find that Gaitan is not eligible for asylum, Gaitan is unable to meet the standard for establishing withholding of removal.