# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2068

_____

Julio Matul-Hernandez,                         *
                                               *
                    Appellant,                 *
                                               *   Petition for Review
         v.                                    *   of an Order of the
                                               *   Board of Immigration Appeals.
Eric H. Holder, Jr., Attorney General          *
of the United States,                          *
                                               *
                    Appellee.                  *

_____

Submitted:  March 14, 2012
    Filed:  July 17, 2012

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Julio Matul-Hernandez seeks review of the Board of Immigration Appeals (BIA) order denying his application for asylum and withholding of removal. We deny the petition for review.

## I. Background

Matul-Hernandez was born in San Francisco, La Union, Quetcaltenango, Guatemala. He was forced into the Guatemalan army as a teenager, and after approximately a year and a half, he deserted during a training exercise in the

mountains. Matul-Hernandez left Guatemala at age sixteen or seventeen and crossed into Mexico. He lived in Cancun, Mexico, and worked in a fruit market there for about five years.

On May 10, 1993, Matul-Hernandez left Mexico and illegally entered the United States. He moved to Nebraska in 1994. At the time of his hearing before the immigration judge (IJ), Matul-Hernandez owned a grocery store in Grand Island, Nebraska.

Since leaving Guatemala, Matul-Hernandez has returned on several occasions. While living in Cancun, he returned to Guatemala for two weeks to get married. During this visit, Matul-Hernandez did not have contact with any government officials or any trouble with guerillas or other criminals. Matul-Hernandez also returned a number of times during 1999 and 2000 to visit his mother, who was hospitalized and very ill. He lived in Chiapas, Mexico, for approximately seven months and would go to Guatemala for two or three days at a time to see his mother. During one of these visits, Matul-Hernandez was threatened by a group of three armed men while he was in his father's store. The men were looking for Matul-Hernandez, but when questioned, he told them he was just a customer at the store and was not related to his father's family. The men did not harm Matul-Hernandez, who returned to the United States in July 2000.

Two members of Matul-Hernandez's family, his uncle and his brother, have been victims of violent crime in Guatemala. In November 2005, one of Matul-Hernandez's uncles, who had lived in the United States for twenty years, visited Guatemala and was kidnapped and later killed. The kidnappers asked for $125,000 ransom, but the family was able to pay only half. After the kidnapping, Matul-Hernandez's family members received phone calls threatening the family. Guatemalan police officers arrested Israel Abundio Gonzalez Garcia for the kidnapping, but after he paid his bond Gonzalez Garcia fled to Miami, where he later

died. Since the kidnapping and murder, Matul-Hernandez's two other uncles who reside in the United States have not visited Guatemala. Later, Matul-Hernandez's brother was attacked and beaten by multiple men who asked him if he was a part of the family. His brother was taken to the hospital and survived the incident.

The government commenced removal proceedings against Matul-Hernandez in 2005.[1] Matul-Hernandez submitted an application for asylum[2] or withholding of removal, and in the alternative applied for the privilege of voluntarily departing the United States. See 8 U.S.C. §§ 1158, 1231(b)(3), and 1229c. Matul-Hernandez based his asylum application on his membership in a particular social group, which he defined as "Guatemalans returning from the United States who are perceived as wealthy." Although the IJ found Matul-Hernandez's testimony to be credible, he denied Matul-Hernandez's application for asylum and withholding of removal, concluding that Matul-Hernandez did not meet the requirements for a grant of asylum. The IJ did, however, grant Matul-Hernandez voluntary departure.

Matul-Hernandez appealed the IJ's order to the BIA. The BIA, based on the IJ's findings of fact, determined that Matul-Hernandez did not meet his burden of showing past persecution or a reasonable probability of future persecution, that he did not show that the government of Guatemala was unable or unwilling to control alleged persecutors, and that there was little evidence that his social group would be perceived

---

[1]Matul-Hernandez conceded that he is removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), which states that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[2]Matul-Hernandez first completed an asylum application in March of 1994. The asylum application that is the subject of this review is his updated application, completed in September of 2008.

as a group by society or subject to a higher incidence of crime than the rest of the population. The BIA dismissed the appeal on April 20, 2011.

Matul-Hernandez challenges the BIA's decision and seeks a grant of asylum, relief under the Convention Against Torture, or withholding of removal. He argues that he is a member of two socially recognizable groups: "Guatemalans returning from the United States who are perceived as wealthy," and "family members of kidnapped and murdered victims in Guatemala."

## II. Discussion

### A. Standard of Review

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Davila-Mejia v. Mukasey, 531 F.3d 624, 627 (8th Cir. 2008) (citing Falaja v. Gonzales, 418 F.3d 889, 894 (8th Cir. 2005)). "A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record." Id. (quoting Hassan v. Gonzales, 484 F.3d 513, 516 (8th Cir. 2007)). The BIA's findings regarding eligibility for withholding of removal are also reviewed for substantial evidence. Al Yatim v. Mukasey, 531 F.3d 584, 587 (8th Cir. 2008) (citing Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007)). Review for substantial evidence is an "extremely deferential standard of review." Id. (quoting Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005)). "We review the BIA's legal determinations de novo, according substantial deference to the BIA's interpretation of the statutes and regulations it administers." Davila-Mejia, 531 F.3d at 627 (citing Hassan, 484 F.3d at 516).

## B. Asylum

"The Attorney General has discretion to grant asylum to a refugee." Al Yatim, 531 F.3d at 587 (citing Makatengkeng v. Gonzales, 495 F.3d 876, 881 (8th Cir. 2007)). The applicant for asylum bears the burden of proving that he or she is a refugee as defined by the Immigration and Nationality Act (INA). 8 C.F.R. § 1208.13(a). A refugee is a person unwilling or unable to return to the country of their nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

"Persecution includes the credible threat of death, torture, or injury to one's person or liberty on account of a protected ground." Al Yatim, 531 F.3d at 587 (citing Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)). "'Persecution is an extreme concept' that 'does not include low-level intimidation and harassment.'" Lopez-Amador v. Holder, 649 F.3d 880, 884 (8th Cir. 2011) (quoting Zakirov v. Ashcroft, 384 F.3d 541, 546 (8th Cir. 2004)). Additionally, persecution requires the asylum applicant to show that "the assaults were either condoned by the government or were committed by private actors 'that the government was unwilling or unable to control.'" Beck v. Mukasey, 527 F.3d 737, 740 (8th Cir. 2008) (quoting Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005)).

An applicant for asylum who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. §1208.13(b). An applicant who does not demonstrate past persecution must show "an objectively reasonable fear of particularized persecution" in the future. Al Yatim, 531 F.3d at 587 (citation omitted). "To overcome the BIA's finding that [petitioner] lacked a well-founded fear of persecution, [petitioner] must show the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Davila-

Mejia, 531 F.3d at 628 (alteration in original) (quoting Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993) (internal citations and quotations omitted)).

The BIA found that Matul-Hernandez did not meet his burden to show a well-founded fear of persecution upon return to Guatemala on account of his membership in a particular social group, namely, Guatemalans returning from the United States who are perceived as wealthy. This determination was based on the IJ's factual finding that although Matul-Hernandez was threatened by the three men in his father's store, he has not been physically harmed by gangs or criminals in Guatemala. The BIA's determination that Matul-Hernandez's experiences do not rise to the level of past persecution is supported by substantial evidence in the record. The BIA and IJ also found that Matul-Hernandez had not established a well-founded fear of persecution based on membership in a particular social group because Matul-Hernandez failed to establish membership in such a group. We agree.

The phrase "particular social group" is not defined in the INA. Ngengwe v. Mukasey, 543 F.3d 1029, 1033 (8th Cir. 2008). "As a result, we give Chevron deference to the BIA's reasonable interpretation of the phrase, and will not overturn the BIA's conclusion unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" Gaitan v. Holder, 671 F.3d 678, 680 (8th Cir. 2012) (citing Ngengwe, 543 F.3d at 1033 and Chevron, U.S.A., Inc., v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984)); see also Holder v. Martinez Gutierrez, 132 S. Ct. 2011, 2017 (2012) (the BIA's construction "prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best.") (citations omitted). The BIA construes the term to mean people who "hold an immutable characteristic, or common trait such as sex, color, kinship, or in some cases shared past experiences." Davila-Mejia, 531 F.3d 628 (citing In re Acosta, 19 I & N Dec. 211, 233 (BIA 1985)). In a 2007 decision, In re A-M-E- & J-G-U-, 24 I & N Dec. 69 (BIA 2007), the BIA found that "affluent Guatemalans" do not constitute a

particular social group within the meaning of the INA, because the group lacked the requisite particularity and social visibility.

We faced a similar question in Davila-Mejia, when we held that the group "competing family business owners" in Guatemala is not a particular social group within the meaning of the INA. 531 F.3d at 629. In Davila-Mejia, we relied on the BIA's decision in A-M-E- & J-G-U-, and noted that the petitioners in that case had not presented evidence that family business owners in Guatemala were "recognized as a group that is at a greater risk of crime in general or of extortion, robbery, or threats in particular." Id.

Here, the BIA found that "Guatemalans returning from the United States who are perceived as wealthy" are a not particular and socially visible group such that they could be perceived as a group and targeted for persecution. The BIA relied on the IJ's factual findings that although "crime and violence are significant problems" in Guatemala, "the respondent did not demonstrate that it is a common pattern or practice in Guatemala to kidnap individuals returning from the United States based on their perceived wealth." As the IJ and BIA noted, Matul-Hernandez presented no evidence that his uncle's kidnapping and ransom request were at all related to the fact that he was visiting from the United States. The BIA also found that there was little evidence that the purported group would be perceived as a determinable group by society or subject to a higher incidence of crime than the rest of the population.

In addition to concluding that the BIA's determination is supported by substantial evidence, we are persuaded by the reasoning of the First Circuit in addressing this issue: "[N]othing indicates that in Guatemala individuals perceived to be wealthy are persecuted *because* they belong to a social class or group. In a poorly policed country, rich and poor are all prey to criminals who care about nothing more than taking it for themselves." Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011) (rejecting as a social group Guatemalans returning after a long residence in the

United States and therefore perceived as wealthy and particularly susceptible to extortionate and/or kidnapping demands). We agree with the BIA that the group "Guatemalans returning from the United States who are perceived as wealthy" is not a particular social group within the meaning of the INA.

Matul-Hernandez's argument that he is part of a second social group, "family members of kidnapped and murdered victims in Guatemala," that is subject to persecution, was not raised below. We have consistently held that we may not consider an issue that a petitioner has failed to raise before the BIA. Manani v. Filip, 552 F.3d 894, 900 n.4 (8th Cir. 2009); Zine v. Mukasey, 517 F.3d 535, 539-40 (8th Cir. 2008); Etchu-Njang v. Gonzales, 403 F.3d 577, 581-84 (8th Cir. 2005).

## C. Withholding of Removal

Withholding of removal requires a greater showing by the applicant: that there is a "clear probability of persecution." Guled v. Mukasey, 515 F.3d 872, 881 (8th Cir. 2008). "Therefore, an alien who cannot meet the standard for asylum cannot meet the standard for establishing withholding of removal." Id. (citing Ngure v. Ashcroft, 367 F.3d 975, 992 (8th Cir. 2004)). Because Matul-Hernandez did not establish the well-founded fear of persecution required for asylum, he did not meet the more rigorous burden of showing a clear probability of persecution.

## D. Convention Against Torture

In his brief, Matul-Hernandez also requests relief under the Convention Against Torture. Matul-Hernandez claims that this is not a new argument raised on appeal because he included the elements required for relief in his pre-hearing brief without

mentioning the Convention Against Torture.[3]  We disagree, because the issue was not raised below.  The word "torture" does not appear in the brief, government consent or awareness of violent crime before it occurs is not mentioned, and in his conclusion Matul-Hernandez requests only that "this court grant him asylum, or in the alternative, Withholding of Removal, or Voluntary Departure."  The IJ did not address the issue, and the BIA explicitly noted that "[t]he respondent did not seek protection under the Convention Against Torture, and [such protection] is thus deemed waived."

Because Matul-Hernandez did not raise the issue before the BIA, we may not consider this claim.  Manani, 552 F.3d at 900 n.4.

III.

We deny the petition for review.

_____

---

[3]To be eligible for relief, Matul-Hernandez would have had to demonstrate (1) that it is more likely than not that he would be subjected to torture if returned to Guatemala and (2) that such torture would be inflicted with the consent or acquiescence of a public official.  Menjivar, 416 F.3d at 923 (citing 8 C.F.R. §§ 208.16(c)(2) and 208.18(a)(1)). Acquiescence, in turn, requires prior awareness of the torture and a breach of legal responsibility to intervene.  Id. (citations omitted).