# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1646

_____

Ebirceo Oxlaj-Vasquez

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 14, 2012
Filed: April 1, 2013
[Unpublished]

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Ebirceo Oxlaj-Vasquez ("Oxlaj-Vasquez") petitions this court for review of the Board of Immigration Appeals' ("BIA") order affirming the immigration judge's ("IJ") denial of his application for withholding of removal. Having jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## I.    BACKGROUND

Oxlaj-Vasquez, a 29-year-old citizen of Guatemala, entered the United States on or about March 28, 2002.  Prior to that time, Oxlaj-Vasquez worked as a farmer in the village of La Felicidad in Guatemala.  On the night of February 26, 2002, six masked, armed individuals entered Oxlaj-Vasquez's house.  The intruders pointed a weapon at Oxlaj-Vasquez's head and demanded that Oxlaj-Vasquez sell stored crop seed and give them the money that resulted from the sale.  They told Oxlaj-Vasquez he had one week to sell his stored crop seed and obtain the money.  Oxlaj-Vasquez, his wife and two children were not physically harmed, but the men stole a stereo, a television and a bicycle.  The men threatened to kill Oxlaj-Vasquez if he did not obey or if he went to the authorities.  Oxlaj-Vasquez was not able to identify the intruders.

The following day Oxlaj-Vasquez reported the incident to the village mayor, who suggested that Oxlaj-Vasquez go to the police, located in a town forty-five minutes away by bus.  Oxlaj-Vasquez went to the police, who investigated Oxlaj-Vasquez's home but found no trace of the robbers.  On approximately February 28, 2002, fearful that the individuals would return, Oxlaj-Vasquez sold his crops and moved from his home with his wife and two children to the Tecun area on the Mexico border. Oxlaj-Vasquez's wife and children remained in the Tecun area for a few days, then returned to La Felicidad to live with Oxlaj-Vasquez's father-in-law.  After being in Tecun for two days, Oxlaj-Vasquez traveled to Tapachula, Mexico, and from there entered the United States. Oxlaj-Vasquez's wife came to the United States later, but his children are still living in Guatemala.

On March 23, 2007, the Department of Homeland Security charged Oxlaj-Vasquez with removal as an alien present in the United States without being admitted or paroled.   Oxlaj-Vasquez conceded removability and requested asylum and withholding of removal.  The IJ concluded Oxlaj-Vasquez's testimony was credible, despite some inconsistencies in the evidence, but dismissed his asylum claim because

his application was time-barred by the Immigration and Nationality Act ("INA") Section 208(a)(2)(B). See 8 U.S.C. § 1158(a)(2)(B). As to Oxlaj-Vasquez's withholding of removal application, the IJ concluded that the incident that occurred in 2002 did not constitute past persecution because Oxlaj-Vasquez was not physically harmed, could not identify the intruders, and never saw the individuals again. The IJ went on to reason that even if the burglary constituted past persecution, Oxlaj-Vasquez did not demonstrate that it occurred on account of one of the protected grounds under the INA. Oxlaj-Vasquez alleged that the persecution occurred because of his membership in a particular social group–"Guatemalans who have rejected extortion efforts by armed criminals in Guatemala and who have reported extortion attempts to police." The IJ, however, found that the alleged group was not one protected by the INA. Further, the IJ concluded that Oxlaj-Vasquez failed to establish by a clear probability that the 2002 incident was the central reason he would be persecuted upon his return to Guatemala. Thus, the IJ concluded Oxlaj-Vasquez failed to establish past persecution or a clear probability of future persecution. Accordingly, Oxlaj-Vasquez's withholding of removal application failed.

Oxlaj-Vasquez appealed to the BIA, challenging the IJ's findings that Oxlaj-Vasquez did not suffer persecution and that he was not a member of a protected social group. The BIA affirmed the IJ's conclusion that Oxlaj-Vasquez was statutorily ineligible for asylum due to the untimeliness of his application. The BIA also found that Oxlaj-Vasquez did not meet his burden of proof for withholding of removal, concluding that Oxlaj-Vasquez did not show he suffered past persecution or that there was a clear probability his life would be threatened upon his return to Guatemala. The BIA, agreeing with the IJ, noted that Oxlaj-Vasquez's alleged group was not a protected group, and that even if it was protected, Oxlaj-Vasquez did not demonstrate he was harmed or would be harmed on account of such membership. Oxlaj-Vasquez petitions for review of the BIA's decision as to his withholding of removal claim. We deny the petition.

## II.    DISCUSSION

We review the BIA's decision, as it is the final agency action, but "to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Matul-Hernandez v. Holder, 685 F.3d 707, 710-11 (8th Cir. 2012) (quotation omitted). The denial of an application for withholding of removal is reviewed for substantial evidence.[1] Mouawad v. Gonzales, 485 F.3d 405, 412 (8th Cir. 2007). Under this extremely deferential standard of review, we will only reverse if the evidence is so compelling that no reasonable fact-finder could fail to find for Oxlaj-Vasquez. La v. Holder, 701 F.3d 566, 570 (8th Cir. 2012).

To establish eligibility for withholding of removal an applicant must show a clear probability that "'his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Mouawad, 485 F.3d at 411 (quoting 8 C.F.R. § 1208.16(b)). The applicant may establish withholding of removal by demonstrating past persecution on the basis of one of the enumerated grounds, which establishes the rebuttable presumption that his life or freedom would be threatened upon removal. Id.; 8 C.F.R. § 1208.16(b)(1)(i). Where the applicant fails to demonstrate past persecution, he can establish withholding of removal by proving that his life or freedom would be threatened in the future by showing that it is more likely than not that he will be persecuted on one of the protected grounds upon removal. Mouawad, 485 F.3d at 412; 8 C.F.R. § 1208.16(b)(2).

---

[1]We do not have jurisdiction to review Oxlaj-Vasquez's asylum application. 8 U.S.C. §§1158(a)(2)(B), (a)(3); Mouawad v. Gonzales, 485 F.3d 405, 411 (8th Cir. 2007).

Oxlaj-Vasquez challenges the BIA's decision that he was not a member of a protected social group. Oxlaj-Vasquez asserts, contrary to the IJ's determination adopted by the BIA, he was a member of a protected social group. Whether a group is a "particular social group" is a question of law we review de novo. Malonga v. Mukasey, 546 F.3d 546, 553 (8th Cir. 2008). The INA, however, does not expressly define the term "particular social group," and accordingly, "we give Chevron deference to the BIA's reasonable interpretation of the phrase and will not overturn the BIA's conclusion unless it is arbitrary, capricious, or manifestly contrary to the statute." Gaitan v. Holder, 671 F.3d 678, 680 (8th Cir.) (internal quotations omitted), cert. denied, 133 S. Ct. 526 (2012); see also Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984).

The BIA has defined "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic . . . . that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Gaitan, 671 F.3d at 680 (alteration in original) (quotation omitted). Further, the social group must be both particular, such that "the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons," and socially visible in a way that the members are "perceived as a group by society, such that these individuals suffer from a higher incidence of crime than the rest of the population." Id. (quotation and internal quotations omitted).

The BIA and the IJ correctly determined that the social group advanced by Oxlaj-Vasquez is not protected by the INA. The alleged social group does not possess the type of immutable characteristic protected by the INA such as "sex, color, or kinship ties, or in some circumstances . . . shared past experience." Malonga, 546 F.3d at 553 (alteration in original) (quotation omitted). Oxlaj-Vasquez asserts that whether the group is "socially visible" is irrelevant. Our precedent, however,

indicates otherwise. See Gaitan, 671 F.3d at 681 (holding the applicant must show social visibility and particularity). Oxlaj-Vasquez further asserts that the size of the social group is irrelevant, citing Malonga. While this court in Malonga criticized the IJ for focusing on the size of the alleged social group, the court in Malonga pointed to other characteristics of the alleged ethnic group, such as a common dialect or similar surnames, that made the group recognizable. Malonga, 546 F.3d at 554. Oxlaj-Vasquez presented no similar evidence here. Oxlaj-Vasquez has not advanced any arguments that compel us to find the BIA's decision was "arbitrary, capricious, or manifestly contrary to the statute."

Further, the BIA correctly concluded that even if the proposed group constituted a particular social group, Oxlaj-Vasquez failed to demonstrate that the alleged persecutors have ever been motivated to harm him on account of such membership. See Matul-Hernandez, 685 F.3d at 712-13 (concluding that "Guatemalans returning from the United States who are perceived as wealthy" is not a particular social group and where nothing in the record indicated that the applicant was persecuted *because of* his membership in that group, his alleged social group failed). Rather, Oxlaj-Vasquez was likely a victim of an isolated incident of crime by random perpetrators, and while Oxlaj-Vasquez might fear returning to Guatemala due to general crime, Oxlaj-Vasquez has not established a clear probability that his life or freedom would be threatened if he was returned to Guatemala due to his membership in the alleged social group. Thus, we see no error in the BIA's denial of Oxlaj-Vasquez's application for withholding of removal.[2]

---

[2]Oxlaj-Vasquez asserts the BIA erred by failing to address whether the Guatemalan government was unwilling or unable to control the alleged persecutors. This issue, however, was not raised in Oxlaj-Vasquez's brief to the BIA and, thus, "constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to hear the matter." Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006).

## III. CONCLUSION

For the foregoing reasons, we deny Oxlaj-Vasquez's petition for review.

_____