# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-2290

———————————————

Edilberto Antonio-Fuentes,

*Petitioner*,

v.

Eric H. Holder, Jr., Attorney General of United States,

*Respondent*.

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: April 17, 2014
Filed: August 22, 2014

——————————

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

Edilberto Antonio-Fuentes petitions for review of a decision of the Board of
Immigration Appeals denying his application for asylum, withholding of removal, and
relief under the Convention Against Torture. We deny the petition for review.

## I.

Fuentes is a native and citizen of El Salvador, who entered the United States in November 2008. In March 2010, the government initiated removal proceedings against him. In June 2011, Fuentes filed an application for asylum and related relief. At a hearing before an immigration judge, Fuentes testified to the circumstances of his departure from El Salvador. He testified that his primary reason for coming to the United States was "to help his family so they can have a better life." He said that he left his parents, eleven siblings, wife, and children in El Salvador, because "there is not a lot of work."

Fuentes described three experiences with gangs in El Salvador. First, in May 2005, Fuentes's cousin, Saul Elias Guerrero, with whom Fuentes resided, was shot and killed by gang members. According to Fuentes, Guerrero had been a member of a gang, but had attempted to leave the gang and to avoid criminal activity. The gang members shot Guerrero because they recognized him as a member of a rival gang. Salvadoran police investigated Guerrero's slaying, but were unable to identify the gunmen.

Second, Fuentes had a run-in with gang members while on a bus. The gang members, asserting that Fuentes previously had thrown rocks at them, held a gun to his head and chest and threatened him. Before the event escalated further, several girls came along, and the gang members left Fuentes alone in order to rob the girls.

Third, gang members threatened another of Fuentes's cousins, who owned a beauty shop where two of Fuentes's sisters worked, and demanded $6,000. As a result of this threat, Fuentes's cousin relocated her beauty shop thirty miles away to avoid further harassment.

Fuentes testified that he had never been recruited by a gang and that none of his immediate family members is a gang member. He told the immigration judge that he disagrees with the gang's activities and that he is afraid of the Salvadoran gangs because "they take everything from you." He fears that if he were returned to El Salvador, gang members would recognize that he was returned from the United States and would believe that he is wealthy.

The immigration judge found that Fuentes was credible, but noted that the three incidents described by Fuentes were "the only criminal contacts by the gangs against [him] and his family." The judge found that Fuentes's "wife and children have never been hurt or bothered by the gangs." The immigration judge also explained that Fuentes "believes that the police response to the gang issues is slow but that is due in part to [the fact that] El Salvador has 'a lot of crime and they are very busy.'"

The immigration judge determined that Fuentes's application for asylum was untimely. On withholding of removal, the judge concluded that Fuentes was ineligible for relief because he could not show a well-founded fear of future persecution on account of a protected ground. The immigration judge reasoned that Fuentes did not establish membership in a particular social group that faced persecution, and he "failed to testify or elucidate any political opinion that he holds that would justify a claim for relief under the [Immigration and Nationality Act]." Regarding Fuentes's application for relief under the Convention Against Torture, the judge found that Fuentes did not establish that he was likely to be tortured upon return to El Salvador or that the Salvadoran police condone or participate in criminal activities.

On administrative appeal, the Board affirmed the immigration judge's decision and dismissed Fuentes's appeal. After concluding that Fuentes's application for asylum was untimely, the Board also agreed with the immigration judge that Fuentes failed to establish eligibility for withholding of removal based on fear of persecution

due to membership in a particular social group. Relying on decisions of this court, the Board concluded that none of Fuentes's asserted social groups—"men in El Salvador who fear gang violence because of a former gang member who is also their family member," a "member of a household of such a person who was killed by a gang," and "individuals returning to El Salvador after working in the United States who may be perceived to be wealthy"—was recognized as a "particular social group" under the Act. *See Matul–Hernandez v. Holder*, 685 F.3d 707 (8th Cir. 2012); *Constanza v. Holder*, 647 F.3d 749 (8th Cir. 2011). The Board concluded that Fuentes waived his argument that he feared persecution based on political opinion because he failed to assert it before the immigration judge. Finally, the Board agreed with the immigration judge that Fuentes was not eligible for relief under the Convention Against Torture.

Fuentes petitions for review of the Board's decision. We review the Board's decision for substantial evidence on the record as a whole, *Menendez–Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004), and will not disturb its findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias–Zacarias*, 502 U.S. 478, 481 & n. 1, 483–84 (1992). Insofar as the Board adopted the reasoning of the immigration judge, we consider the two decisions together. *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005).

II.

Fuentes argues that the Board erred in concluding that he was ineligible for withholding of removal. An alien is entitled to withholding of removal if he shows a clear probability that his life or freedom would be threatened in the country of removal based on one of several protected grounds, including membership in a particular social group or on political opinion. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b).

-4-

Fuentes asserts that the Board erred in ruling that he failed to identify a "particular social group" that is recognized under the Immigration and Nationality Act. He contends that "men in El Salvador who fear gang violence because of a former gang member who is also their family member" is a particular social group, and that his life or freedom would be threatened in El Salvador based on his membership in that group. The Board defines "particular social group" as one with "particular and well-defined boundaries" and "a recognized level of social visibility." *Matter of S–E–G–*, 24 I. & N. Dec 579, 582–83 (BIA 2008). This court held in *Gaitan v. Holder*, 671 F.3d 678 (8th Cir. 2012), that the Board's definition is not arbitrary or capricious. *Id*. at 681.

In *Constanza v. Holder*, 647 F.3d 749, we ruled that an alien's membership in "a family that experienced gang violence" lacked the "visibility and particularity required to constitute a social group" under the statute. *Id*. at 753–54. In that case, other family members of the alien lived in El Salvador without suffering gang violence, and there was no evidence that gangs specifically targeted the alien's family. *Id.* at 753. Fuentes argues that his family-based social group is particularly visible because Fuentes lived with his cousin Guerrero at the time of Guerrero's murder, and because Guerrero's murder was publicized in the news media. But the requirement of "visibility" in this context refers to "'whether the members of the group are perceived as a group by society,' such that 'these individuals suffer from a higher incidence of crime than the rest of the population.'" *Gaitan*, 671 F.3d at 680 (quoting *Matter of S–E–G–*, 24 I. & N. Dec at 586–87). Fuentes, like the alien in *Constanza*, did not establish that gangs specifically targeted his family as a group. Although Guerrero's death might have been widely publicized, Fuentes failed to show that his family is "different from any other Salvadoran family that has experienced gang violence." *Constanza*, 647 F.3d at 754.[*]

---

[*]Fuentes renews his claim that "individuals returning to El Salvador after working in the United States who may be perceived to be wealthy" are a "particular

Fuentes also complains that the Board mistakenly ruled that he waived his claim alleging a fear of persecution on account of political opinion. The Board has established that an alien waives any issue that is not presented to an immigration judge. *In re R–S–H*, 23 I. & N. Dec. 629, 638 (BIA 2003).

> Where the agency properly applies its own waiver rule and refuses to consider the merits of an argument that was not raised in the initial hearing, we will not permit an end run around those discretionary agency procedures by addressing the argument for the first time in a petition for judicial review.

*Pinos–Gonzalez v. Mukasey*, 519 F.3d 436, 440 (8th Cir. 2008). In his brief to the Board, Fuentes urged that "his position opposed to gang membership amounts to a political opinion in El Salvador because the gangs which thrive there are a sort of shadow government." The Board ruled that Fuentes's political-opinion argument was waived because he raised it for the first time on administrative appeal.

Fuentes says he did raise the argument by checking the "political opinion" box on his application for asylum, and by averring in an affidavit that "I never have wanted to be part of a gang, and I would never be part of a gang even if I had to go back," and by testifying "No" at the removal hearing when his attorney asked, "Do you agree with the gang?" The immigration judge found, however, that Fuentes "failed to testify or elucidate any political opinion that he holds that would justify a claim for relief under the INA." The record supports this finding. The Board properly enforced its waiver rule, and that rule does not deprive Fuentes of due process.

---

social group," but he concedes that this contention is foreclosed by *Matul-Hernandez*, 685 F.3d 707.

Finally, Fuentes argues that BIA erred in denying him relief under the Convention Against Torture. The immigration judge found no evidence that the police in El Salvador condone or participate in criminal activities, and that Fuentes's fear of torture was not justified. The Board agreed with this finding, and it is conclusive unless any reasonable adjudicator would be compelled to reach the contrary conclusion. 8 U.S.C. § 1252(b)(4)(B). Fuentes alleges that the Salvadoran police are "thoroughly corrupt and complicit" and "willfully blind" to torture that gangs inflict, but he does not cite compelling evidence to override the findings of the Board and the immigration judge. This case is not comparable to *Ramirez–Peyro v. Holder*, 574 F.3d 893 (8th Cir. 2009), where the alien had infiltrated a Mexican drug cartel as an informant for the United States government, and witnessed Mexican police officers commit murder at the behest of the cartel. Fuentes's own affidavit acknowledged that the Salvadoran police "try to help, but there is a lot of crime and they are very busy."

\*     \*     \*

The petition for review is denied.

_____