# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2443

_____

Carlos Reynoso Lucas

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 18, 2016
Filed: July 1, 2016
[Unpublished]

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

PER CURIAM.

Carlos Reynoso Lucas, a native and citizen of Guatemala, entered the United States illegally in April 2005. In February 2011, he pleaded guilty to an Iowa misdemeanor and was thereafter charged with removability as an alien present in the United States without being admitted or paroled. Lucas conceded removability, but sought relief from removal by filing applications for asylum, withholding of removal,

and protection under the Convention Against Torture (CAT), claiming that he had been persecuted in Guatemala on account of his religion and his membership in the particular social group of "Guatemalan Christians" and that he feared future persecution if he were to be returned to Guatemala. Following a hearing, the immigration judge (IJ) denied relief, and the Board of Immigration Appeals (Board) dismissed Lucas's appeal. We deny Lucas's petition for review.

Lucas testified that he was born in Guatemala on October 22, 1986, and that his parents, two brothers, and one sister still live in Guatemala. He stated that he and his family are Christians and belong to the Bridge of Life Church, where Lucas also sang in the choir. He testified that he left Guatemala after three encounters with unknown members of the 18th Street criminal gang, a group that Lucas testified would indiscriminately "hurt[] all of the people" in his small town. Lucas's first encounter with the gang occurred while he was walking to church and was approached by three gang members, who attempted to steal his phone and money, tried to recruit him, and then beat him and threatened him with a knife when he resisted. A similar encounter occurred two months later, again while Lucas was walking to church. During the third encounter, Lucas was approached by eight money-demanding gang members. Lucas first stated that he was able to run away and was unharmed, but later stated that a gang member shot him in the foot, leaving a small scar. Lucas testified that he did not report these events to the police, nor did he seek medical treatment following any of the three incidents. Lucas could not identify any of the gang members, and when he was asked why they tried to recruit him, he replied, "I don't know. I don't have any idea why they do want me. I don't know." When asked whether the gang members were "a bunch of criminals who are trying to steal from people," Lucas answered, "Yes. That's their job. That's their work." He further testified that his parents and siblings continue to reside in Guatemala and that none of them have experienced any problems with any gang members. Lucas stated that he feared returning to his hometown in Guatemala because the gang members would "come after [him]" and attempt to kill him and that he could not

relocate safely in another part of Guatemala because he does not "have any family in other" locations in that country.

The IJ denied relief, concluding first that Lucas's application for asylum was untimely because it had not been filed within the statutorily prescribed one-year period following his arrival in the United States. In the alternative, the IJ denied Lucas's asylum application on the merits, concluding that Lucas had not demonstrated that he had suffered past persecution on account of his religion or his membership in a particular social group of Guatemalan Christians. As to past persecution, the IJ found that Lucas had not established that the injuries he suffered rose to the level of persecution, because his testimony demonstrated only that he had been threatened and harassed "by criminals who had requested his phone or money" and were acting solely for personal gain. The IJ also concluded that Lucas had failed to establish that the Guatemalan government was unable or unwilling to control the gang members, particularly given the fact that Lucas had never reported the gang members' attacks to police. The IJ also found that Lucas had failed to establish that his religion or his membership in the group of Guatemalan Christians was "at least one central reason" for the harm he suffered. The evidence did not "suggest that any of the attacks were motivated by [Lucas's] religion," but instead established that the gang members "attack[ed] everyone," including the "Christians, Catholics, Evangelists, and non-churchgoers" in Lucas's community. The IJ thus concluded that Lucas had failed to establish a nexus between the harm he had suffered in the past and any statutorily protected ground. The IJ then concluded that Lucas had failed to establish a well-founded fear of future persecution that was objectively reasonable, particularly in light of the fact that his family members, all of whom were members of Lucas's church, continued to "live unharmed in Guatemala." Finally, the IJ concluded that, because Lucas had failed to meet the lower standard of proof required for asylum, he necessarily failed to meet the more rigorous standard for withholding of removal. And because the evidence cited in support of his claim for CAT relief was identical to the evidence cited in support of his claims for asylum and

withholding of removal, the IJ denied CAT relief without conducting an independent analysis.

Lucas appealed to the Board, which denied all forms of relief and dismissed his appeal, concluding that even if his application for asylum had been timely filed, he had not established the requisite nexus between a protected ground, namely, his religion, and the harm he had suffered in the past and feared he would suffer in the future. The Board also found that even if "Guatemalan Christians" constituted a cognizable particular social group, Lucas had not established that his membership in that group was "at least one central reason" that gang members had targeted him for harm, particularly given his testimony that the gang members targeted everyone in his community, regardless of religious affiliation, and that his family, who attended the same church, continued to live in Guatemala unmolested by gang members.

Lucas's petition for review challenges only the Board's denial of his application for withholding of removal. We review the Board's decision for substantial evidence on the record as a whole, an "extremely deferential standard of review," and we will not disturb the Board's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." Guled v. Mukasey, 515 F.3d 872, 879 (8th Cir. 2008) (citations omitted). We review questions of law *de novo*, but give substantial deference to the Board's reasonable interpretation of the statutes and regulations that it administers. See Matul-Hernandez v. Holder, 685 F.3d 707, 711-12 (8th Cir. 2012). When the Board adopts the reasoning of the IJ, we consider the two decisions together. Singh v. Lynch, 803 F.3d 988, 991 (8th Cir. 2015). To establish eligibility for withholding of removal, an alien must show a "clear probability" that he suffered persecution in the past on account of a statutorily protected ground. Guled, 515 F.3d at 881. If he is unable to make a showing of past persecution, he must demonstrate that he has a well-founded fear of future persecution in the country of removal on account of a statutorily protected ground and

that his fear is both subjectively genuine and objectively reasonable. Davila-Mejia v. Mukasey, 531 F.3d 624, 628 (8th Cir. 2008).

We first note that no reasonable adjudicator would be compelled to conclude that Lucas had suffered past persecution. Persecution is an "extreme concept" that involves "the infliction or threat of death, torture, or injury to one's person or freedom" on account of a protected ground, Malonga v. Holder, 621 F.3d 757, 764 (8th Cir. 2010), and "does not include low-level intimidation and harassment," Singh, 803 F.3d at 991 (citation omitted). In addition, to demonstrate "persecution," an alien must show that the harm he suffered was "inflicted either by the government . . . or by persons or an organization that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005). The injuries Lucas suffered did not rise to the level of persecution. Moreover, Lucas failed to demonstrate that the Guatemalan government was unable or unwilling to control the gang members, given his failure to report their attacks to the police. And even if the harm Lucas suffered constituted more than low-level intimidation and harassment, the gang members acted for personal gain, not on account of any protected ground.

Lucas argues that the Board erred in concluding that he failed to establish the requisite nexus between the harm he suffered and his religion. We disagree. Even if Lucas had demonstrated that he suffered past persecution, the Board properly analyzed whether Lucas had established that his religion was "at least one central reason" for the gang members' attacks, and it did not err in concluding that he had failed to make the requisite showing. See Matter of C-T-L-, 25 I. & N. Dec. 341, 344-46 (BIA Sept. 14, 2010) (noting that after enactment of the REAL ID Act of 2005, the "at least one central reason" standard applies when an alien asserts persecution on account of more than one protected ground, *i.e.*, in mixed-motive cases). Instead, the Board reasoned, the attacks Lucas suffered were part of an effort by gang members to rob him and to recruit him. See Gaitan v. Holder, 671 F.3d 678, 682 (8th Cir. 2012) (rejecting gang recruitment as a basis for relief). Although Lucas

briefly mentioned that the gang members attacked him during one encounter because he had cited his religious beliefs in resisting their recruitment efforts, his testimony as a whole demonstrated that the gang members harassed and attacked him in an effort to rob him of his money and possessions and to retaliate against him for his refusal to join their ranks—irrespective of the reasons Lucas gave for resisting the gang members' efforts. Lucas also conceded at several points in his testimony that gang members harassed and attacked everyone in his community regardless of religious affiliation, further undermining his claim that he was singled out because of his Christian religion.

Lucas also argues that the Board erred in concluding that his proposed particular social group of "Guatemalan Christians" was not cognizable. But the Board assumed for the sake of argument that "Guatemalan Christians" was a cognizable particular social group and nevertheless concluded that, in light of the above-set forth testimony, Lucas had failed to establish that his membership in that group was a reason, much less a central reason, for gang members to target him for harm.

Because Lucas failed to establish that a statutorily protected ground was at least one central reason for the harm he suffered in the past, he was not entitled to a presumption that he had a well-founded fear of future persecution on account of a protected ground. Thus, the Board did not err in concluding that Lucas failed to carry his burden of demonstrating an objectively reasonable fear of future persecution based on a statutorily protected ground. See Garcia-Colindres v. Holder, 700 F.3d 1153, 1158 (8th Cir. 2012).

The petition for review is denied.

_____

-6-