# United States Court of Appeals
## For the Eighth Circuit
_____

No. 11-1875
_____

Carlos Manuel Calles Quinteros,
also known as Jose Vasquez

*Petitioner*

v.

Eric H. Holder, Jr.,
Attorney General of the United States

*Respondent*

_____

No. 11-3425
_____

Carlos Manuel Calles Quinteros,
also known as Jose Vasquez

*Petitioner*

v.

Eric H. Holder, Jr.,
Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Carlos Manuel Calles Quinteros petitions for review of a final order of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition.

## I. *Background*

Calles Quinteros, a citizen of El Salvador, entered the United States in 2003 at the age of 14 without being admitted or paroled. In April 2008, the Immigration and Naturalization Service (INS) charged Calles Quinteros with removability under the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i). Calles Quinteros conceded removability initially but later filed an application for asylum, withholding of removal, and protection under CAT in September 2008. He asserted that he was targeted for persecution because of his membership in a particular social group consisting of family members of local business owners.

According to Calles Quinteros's affidavit, he lived with his family in El Salvador before coming to the United States. Calles Quinteros's father owned a dairy farm and bus transportation company and was well known within the town of 6,000 in El Salvador. Calles Quinteros claims that the Mara Salvatrucha ("MS-13") gang pressured him to join but he refused. Several years after Calles Quinteros fled the country and before he submitted his asylum application, his 14-year-old brother was

shot and killed in El Salvador. Calles Quinteros alleges that the MS-13 gang was responsible for his brother's murder. The El Salvadoran government arrested suspects, but those charged were acquitted. Calles Quinteros also testified that the MS-13 gang threatened to rape his sister. He further testified that the gang had extorted money from his father, at some point torching two of his father's buses. Calles Quinteros's father, mother, and sister continue to live in the same town and in the same house and have not been harmed. His father continues to run the same transportation business and farm. Calles Quinteros acknowledged discrepancies between his affidavit and the proof adduced by the government regarding the date of his brother's death and the destruction of his father's vehicles.

The IJ found Calles Quinteros to be generally credible but determined that the evidence failed to support claims of past persecution, future persecution, or torture under CAT. First, the IJ addressed the timeliness of Calles Quinteros's asylum application, noting that the application had to be filed within one year of arriving in the United States or within a reasonable time after Calles Quinteros turned 18. The IJ found that Calles Quinteros's filing of his asylum application nearly two years after turning 18 was unreasonable. Second, the IJ alternatively denied the asylum application on the merits. Specifically, the IJ noted that Calles Quinteros had testified that he did not suffer any past persecution in El Salvador. He also rejected Calles Quinteros's claim that he belonged to a particular social group because his alleged social group lacked an immutable characteristic. He thus concluded that immediate family members of local business owners would not qualify as a social group. Furthermore, the IJ found that, considering that Calles Quinteros's father, mother, and sister live unharmed in El Salvador and Calles Quinteros was not harmed when he refused to join the MS-13 gang, Calles Quinteros could not establish an objectively reasonable fear of future persecution in El Salvador.

Acknowledging that the brother's murder was tragic, the IJ remarked that the El Salvadoran government did take action to prosecute suspects but that the

individuals charged were acquitted after trial. The IJ also noted Calles Quinteros's family members are "possibly the victims of crime, in that persons are extorting money from them. However, that does not make a case for asylum." The IJ denied Calles Quinteros asylum, concluding that he "failed to show that he suffered past persecution based on one of the five grounds enumerated in the Act, and he has also failed to show that he has a well-founded fear of future persecution." The IJ also "denied [asylum] due to the one-year asylum bar." The IJ acknowledged that while "[t]he country information does indicate that there are problems with gangs in El Salvador," "fear of gangs [is not] a basis for asylum in the United States." Given the higher proof standards for withholding of removal, the IJ also denied that relief, as well as relief under CAT. The IJ granted Calles Quinteros's application for voluntary departure from the United States.

Calles Quinteros filed a timely notice of appeal, and the BIA dismissed the appeal. The BIA affirmed the IJ's conclusion that Calles Quinteros did not meet the burden of proof for obtaining asylum or withholding of removal. The BIA stated, "We find that the Immigration Judge correctly concluded that the respondent failed to meet his burden of establishing past persecution, or that he has a well-founded fear of persecution if returned to El Salvador . . . ." The BIA noted that Calles Quinteros's social group definition, "family member of a business owner," was not an immutable characteristic. The BIA also concluded that "[a]lthough [Calles Quinteros] also requested withholding of removal under the [CAT], [Calles Quinteros] has provided insufficient evidence to suggest that he was tortured in the past in El Salvador or that any government official in El Salvador would either torture him upon his return or acquiesce in his torture by others." The BIA did not review the IJ's decision regarding the timeliness of Calles Quinteros's application.

Calles Quinteros asked the BIA to reopen and reconsider its decision, and the BIA again denied Calles Quinteros's application, which was based on *Crespin-Valladares v. Holder*, 632 F.3d 117, 125–26 (4th Cir. 2011). Noting that the Fourth

Circuit case, *Crespin-Valladares*, was not binding on the Eighth Circuit, the BIA nonetheless distinguished that case on the basis that *Crespin-Valladares* involved an alien who had "demonstrated a viable particular social group." Finally, the BIA denied Calles Quinteros's ineffective-assistance-of-counsel claim, finding no prejudice because it found that the IJ would have denied the claim on the merits regardless of whether counsel had filed the asylum application in a timely manner. Calles Quinteros filed a timely notice of appeal to this court.

## II. *Discussion*

Relying on *Crespin-Valladares*, Calles Quinteros claims membership in a particular social group of immediate family members of a local business owner. He asserts that the BIA and IJ erred in not considering this to be a social group falling within the purview of 8 U.S.C. § 1231(b)(3)(A). Calles Quinteros argues that the BIA should have more clearly explained its reasoning in evaluating his motion to reopen and for reconsideration and actually applied an incorrect legal "standard for assessing whether the extortion [Calles Quinteros's] family has suffered also gives rise to a well founded fear of persecution on account of a protected ground." He also asserts that the BIA erred in not reopening the case based on ineffective assistance of counsel.

"When the Court reviews a BIA determination regarding eligibility for asylum, withholding of removal, or relief under the [CAT], the substantial evidence standard is utilized." *Guled v. Mukasey*, 515 F.3d 872, 879 (8th Cir. 2008). "We review the BIA's decision denying a motion to reopen and reconsider for an abuse of discretion." *Id.* at 882.

"The BIA abuses its discretion where it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." *Id.* "A motion to reopen must present 'new facts that are material to the outcome of the proceeding and were neither available nor discoverable at the prior hearing.'" *Id.*

(quoting *Fongwo v. Gonzales*, 430 F.3d 944, 947 (8th Cir. 2005)). To obtain asylum, Calles Quinteros was required to establish he "is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting 8 U.S.C. § 1101(42)). In order to constitute persecution, the harm must be "'inflicted either by the government of [a country] or by persons or an organization that the government was unable or unwilling to control.'" *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005) (alteration in original) (quoting *Valioukevitch v. I.N.S*, 251 F.3d 747, 749 (8th Cir. 2001)). Calles Quinteros must show that he is more likely than not to "be tortured if returned to the proposed country of removal" and that fear of future persecution must be objectively reasonable and not speculative. *Perinpanathan v. I.N.S.*, 310 F.3d 594, 598–99 (8th Cir. 2002) (citing 8 C.F.R. § 208.16(c)(2)).

We give *Chevron*[1] deference to the BIA's "reasonable interpretation of the phrase" "[p]articular social group." *Ngengwe v. Mukasey*, 543 F.3d 1029, 1033 (8th Cir. 2008).

> The BIA defined the phrase in *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). The BIA used the doctrine of *ejusdem generis* (general words used with specific words should be construed consistent with the specific words), comparing the term particular social group to the other enumerated grounds: race; religion; nationality; and political opinion. *Acosta*, 19 I. & N. at 233. The BIA determined that a particular social group must "share a common, immutable characteristic." *Id*. "The group characteristic must be one 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities and consciences.'" *Davila-Mejia v. Mukasey*, 531 F.3d 624, 628 (8th Cir. 2008), quoting

---

[1] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984).

> *Acosta*, 19 I. & N. at 233. "The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience . . . ." *Acosta*, 19 I. & N. at 233.

*Id*.

"[U]nder BIA precedent, the term 'family business owner' is too amorphous to adequately describe a social group." *Davila-Mejia*, 531 F.3d at 629. There is no "bright line rule for the exclusion of instances of extortion or recruitment as bases for finding past persecution." *De Brenner v. Ashcroft*, 388 F.3d 629, 638 n.2 (8th Cir. 2004). But rather the court must carefully examine the particular circumstances of the alleged persecution. *Id*.

Calles Quinteros relies heavily on the Fourth Circuit case of *Crespin-Valladares*. In *Crespin-Valladares*, an El Salvadoran family sought asylum because their "particular social group" suffered persecution. 632 F.3d at 121. The petitioner's cousin had been murdered by the MS-13 gang in El Salvador. *Id*. at 120. The petitioner and his uncle cooperated with the government's investigation into the crime, and his uncle testified against those charged with the attack. *Id*. After receiving threats from MS-13, the petitioner decided to leave El Salvador and flee to the United States. *Id*. The *Crespin-Valladares* court held that family members of those who testify against gang members in El Salvador and who suffer persecution on account of their family ties are a cognizable social group.[2] *Id*. at 125.

---

[2]By contrast, in *Zelaya v. Holder*, the court rejected persons who notify police of MS-13's harassment tactics and have a specific tormenter within MS-13 as a defined social group because of its lack of a "self-limiting feature." 668 F.3d 159, 166–67 (4th Cir. 2012).

Although *Crespin-Valladares* is not controlling here, it is nonetheless distinguishable on its facts. *Crespin-Valladares* involved an actual murder of a family member by gang members who were eventually convicted. 632 F.3d at 120. Other gang members threatened family members who cooperated with the government and testified against the criminals. *Id.* The persecution was not directed indiscriminately against all family members but was targeted against those family members who cooperated with the prosecution or testified against the accused gang members. *Id.* In the instant case, the alleged arson and extortion against Calles Quinteros's father was uncharged and unproven as having been gang related. And, although the El Salvadoran government arrested suspects in the death of Calles Quinteros's brother, they were acquitted after a trial. Additionally, the alleged persecution was based on Calles Quinteros's father's status as a business owner, a characteristic that under *Davila-Mejia* does not establish a particular social group. 531 F.3d at 629. Calles Quinteros also did not prove that he was targeted for gang membership recruitment because of his father's business interests.

Calles Quinteros has not shown that he has a well-founded fear of future persecution. Calles Quinteros's fear of persecution stems from the alleged extortion of his father, the threat to his sister, and the murder of his younger brother. As noted by the BIA, Calles Quinteros's father, mother, and sisters continue to live unharmed in the same house in El Salvador. In short, based on the evidence presented, Calles Quinteros's fear of persecution may be characterized as speculative and thus not meriting asylum or withholding of removal. *See Perinpanathan*, 310 F.3d at 599.

The BIA gave a rational explanation for its decision, did not distort the record, followed its established polices, relied on no impermissible factors and committed no legal error. We find no abuse of discretion.

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____