# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2900
_____

Fatima Carolina Coreas-Chavez; Carlos Antonio Zelaya-Chavez; S.C.Z.C.

*Petitioner*s

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: September 23, 2022
Filed: November 1, 2022
_____

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Carlos Antonio Zelaya-Chavez, Fatima Carolina Coreas-Chavez, and their daughter, S.C.Z.C. (collectively, Petitioners), natives and citizens of El Salvador, petition for review of the Board of Immigration Appeals's (BIA) denial of Petitioners' motion to reconsider the BIA's prior order, which upheld the immigration judge's (IJ) decision finding the Petitioners removable and denying their applications for asylum, withholding of removal, and relief under the

Convention Against Torture (CAT).  Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

I.

Prior to seeking asylum in the United States, Petitioners lived in a village in El Salvador.  Zelaya-Chavez operated several businesses, including a small store, a mill, and a welding shop.  In 2015, "gangsters" began harassing and extorting Zelaya-Chavez at his store, demanding drinks, cigarettes, and calling cards once or twice a week.  Though the gangsters never physically attacked Zelaya-Chavez, he nonetheless complied with their demands, fearing that the gangsters would harm him or his relatives if he refused.  At one point, Zelaya-Chavez received an anonymous note demanding $130.  The note stated that "it was going to be bad" for Zelaya-Chavez and his family if he refused to comply.  Accordingly, Zelaya-Chavez paid as much of the demand as he could.  The gangsters continued to take merchandise from the store, but they never discussed the note.

Eventually, Zelaya-Chavez filed a police report with a police station in a neighboring town.  A detective interviewed Zelaya-Chavez and asked him to help identify the gangsters.  Zelaya-Chavez agreed.  On two separate occasions, Zelaya-Chavez donned a police uniform and ski mask, rode with the detective through the village, and identified gang members, including the gang's leader.  On one occasion, police attempted to stop the gangsters, but they fled the scene.  They later arrested one of the gangsters but released him due to his young age.  Sometime later, a group of seven armed gangsters came to Zelaya-Chavez's house and threatened to kill him and his family if he had reported them to the police.  They stayed outside the house for approximately 30 minutes.  Despite the encounter, Zelaya-Chavez did not believe the gangsters knew at the time that he had already reported their activities to the police.

Petitioners left El Salvador and entered the United States without a valid entry document on December 25, 2015.  Since their departure, gangsters have continued

to threaten Zelaya-Chavez's relatives. They have demanded two to three dollars from his mother and brother each week. However, the record is unclear as to whether these demands are related to Zelaya-Chavez.

The United States Department of Homeland Security (DHS) filed separate Notices to Appear (NTA) for each Petitioner, charging each with removability. The NTAs noted that Petitioners would receive their hearing dates at a later time, and they did. Coreas-Chavez and her daughter admitted to the allegations contained in the NTAs and conceded to the charges. Zelaya-Chavez's case was later consolidated with his wife and daughter's. Zelaya-Chavez contested his removal solely on the basis that his NTA was deficient by not initially stating his hearing date. He filed a corresponding motion to terminate the proceedings, arguing that such a deficiency deprived the immigration court of jurisdiction. Zelaya-Chavez and Coreas-Chavez independently applied for asylum, each listing their daughter as a derivative applicant. In addition to their application for asylum, each sought withholding of removal and protection under CAT.

The IJ denied Zelaya-Chavez's motion to terminate, noting that this Circuit and the Supreme Court have found that an NTA deficient in stating a hearing date and time does not implicate jurisdictional concerns and that Petitioners received proper notice of the hearing through a subsequent document. Accordingly, the IJ found Zelaya-Chavez removable. Regarding Petitioners' requests for relief, the IJ found that they had not shown past persecution or a well-founded fear of future persecution. The IJ additionally found that Petitioners had failed to show that the Salvadoran government had inflicted or acquiesced in the purported persecution. Accordingly, the IJ denied Petitioners' requests for relief.

Petitioners appealed the decision to the BIA. The BIA first found that Petitioners had not challenged the IJ's denial of Petitioners' application for protection under CAT and Zelaya-Chavez's motion to terminate. The BIA further found that Petitioners' "appellate assertion of the definition of 'persecution' [did] not meaningfully challenge the [IJ's] findings that the extortion attempts and threats

-3-

[did] not rise to the level of persecution" required to prevail on an application for asylum. Accordingly, it found those issues waived. Addressing the merits, the BIA agreed with the IJ that Petitioners had failed to show an objective fear of future persecution and government action or acquiescence. Thus, the BIA dismissed the appeal.

After obtaining new counsel, Petitioners filed a motion to reconsider and a request for stay of relief with the BIA. Petitioners asserted that the BIA erred in affirming the IJ's decision by (1) finding that Petitioners had waived their challenge to the IJ's past-persecution determination, (2) upholding the IJ's determination that Petitioners had failed to show a well-founded fear of future persecution, (3) upholding the IJ's determination that Petitioners had failed to show the Salvadoran government's involvement or acquiescence, and (4) ignoring the nexus between Petitioners' interactions with police and the gang's subsequent threats. The BIA denied the motion and request, noting that Petitioners were largely attempting to impermissibly supplement their previous arguments.

Petitioners then filed this petition for review, arguing that the BIA erred in denying their motion to reconsider and request for stay of relief by (1) finding their challenge to the IJ's past-persecution determination waived, (2) failing to address their alternative argument related to past persecution, (3) ignoring their claims that the gang's threats were related to Zelaya-Chavez's interactions with the police, and (4) misconstruing their arguments related to fear of future persecution.

Subsequent to filing this petition, Petitioners filed a motion to remand, arguing that the agency needed an opportunity to apply its intervening precedent, Matter of Fernandes, 28 I. & N. Dec. 605 (BIA 2022) (holding that NTAs deficient in listing a court date and time violate a mandatory claims-processing rule), to Petitioners' case. We entered an order denying the motion on August 22, 2022.

## II.

Petitioners argue that the BIA erred in denying their motion to reconsider and request for stay of relief by (1) finding their challenge to the IJ's past-persecution determination waived, (2) failing to address their second argument related to past persecution, (3) ignoring their claims that the gang's threats were related to Zelaya-Chavez's interactions with the police, and (4) misconstruing their arguments related to fear of future persecution. However, we need not decide any of the foregoing because Petitioners fail to challenge a determinative issue: whether the Salvadoran government inflicted or acquiesced in Petitioners' alleged persecution. See Salman v. Holder, 687 F.3d 991, 994-95 (8th Cir. 2012) ("Importantly, our cases and those of the BIA . . . hold that 'persecution' requires the harm applicant fears to be 'inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control.'" (citation omitted)); see also Matter of A-R-C-G-, 26 I. & N. Dec. 388, 395 (BIA 2014) (noting that on remand petitioner must "demonstrate that the [government] was unwilling or unable to control the 'private' actor" to prevail on asylum claim based on past persecution (citation omitted)).

Here, in denying Petitioners' motion to reconsider, the BIA reaffirmed its previous finding: "Moreover, [Petitioners] have not persuasively shown any error of law or fact in our prior decision to establish that the Salvadoran government would be unable or unwilling to control the individuals they fear." In their petition for review, Petitioners do not meaningfully argue that the BIA erred in reaching this conclusion and have accordingly waived any challenge to such finding. Lemus-Arita v. Sessions, 854 F.3d 476, 479 n.2 (8th Cir. 2017). Thus, Petitioners cannot show that they suffered persecution and their claims for relief necessarily fail.

## III.

For the foregoing reasons, we deny Petitioners' petition for review.

_____