# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3653
_____

Israel Amador-Morales

*Petitioner*

v.

Merrick B. Garland

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 17, 2023
Filed: February 27, 2024

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Israel Amador-Morales petitions for review of the denial of his motion to reopen by the Board of Immigration Appeals. This court denies the petition.

Morales, a citizen of Mexico, entered the United States without inspection in 2003. Seven years later, the Department of Homeland Security sought to remove him to Mexico. He agreed to voluntary departure, lawfully departing in November

2012. He returned to the United States without inspection in January 2013. A year and a half later, DHS again sought to remove him. Morales received a Notice to Appear (NTA) alleging removability as an alien present in the United States without being admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). The NTA omitted the date and time of his hearing.

On November 22, 2016, Morales, with counsel, admitted the allegations in the NTA and conceded removability. The Immigration Judge then asked counsel if he wanted "some attorney prep time" to "investigate the U-visa" as a form of relief from removal. Counsel said he would. For the next two years, at four separate hearings, his counsel and the IJ discussed avenues for relief from removal including: a U-Visa application, voluntary departure, and cancellation of removal for non-lawful permanent residents. On February 25, 2019, noting *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Morales amended his pleading to withdraw both his admission to the allegations and concession of removability. He also moved to terminate the proceedings.

A month later, the IJ, in a written decision, denied the motion to terminate proceedings, granted DHS's motion to pretermit his application for cancellation of removal, and ordered him removed to Mexico. Morales appealed. On July 1, 2022, the BIA dismissed the appeal. On November 25, 2022, the BIA denied the motion to reopen.

Morales asks this court to reverse and remand to the BIA. He argues it: (1) should have granted his motion to reopen; (2) erred in ruling that his objection to the NTA was untimely; and (3) misconstrued his motion as asking it to "compel" DHS to exercise prosecutorial discretion.

The court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Mshihiri v. Holder*, 753 F.3d 785, 789 (8th Cir. 2014), *citing Quinteros v. Holder*, 707 F.3d 1006, 1009 (8th Cir. 2013). "The BIA abuses its discretion where it gives no rational explanation for its decision, departs from its established

policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." *Id.*

## I.

After the BIA dismissed his appeal but before it denied his motion to reopen, it decided *Matter of Fernandes*, 28 I. & N. Dec. 605 (BIA 2022). According to Morales, this was an intervening precedent about the BIA's claim-processing principles. An intervening change in the law that "pertains to the rules of the proceeding at which deportation was ordered" may justify reopening after the fact. *INS v. Doherty*, 502 U.S. 314, 325 (1992).

Morales believes that *Fernandes* is an intervening precedent based on his view of the prior cases, especially *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (BIA 2020); *Matter of Arambula Bravo*, 28 I. & N. Dec. 388 (BIA 2021); *Matter of Nchifor*, 28 I. & N. Dec. 585 (BIA 2022).

The *Rosales Vargas* case explains that an NTA lacking the address of the immigration court still vests it with subject matter jurisdiction. *Vargas*, 27 I. & N. Dec. at 745. The immigration court also has subject matter jurisdiction if the NTA lacks a certificate of service. *Id.* "Informed by the principles of administrative law and considering the regulation in context," "jurisdiction" in 8 C.F.R. § 1003.14(a) is a claim-processing rule. *Id.* at 752. The BIA added that a "claim-processing rule may be challenged in a timely manner." *Id.* at 753.

The *Arambula Bravo* case says that the "absence of information required by section 239(a) is not a jurisdictional defect." *Arambula Bravo*, 28 I. & N. Dec. at 391, *interpreting* **8 U.S.C. § 1229(a)**. In *Arambula*, whether section 239(a) is "a mandatory claims-processing rule" was raised by amicus. *Id.* at 392 n.3. However, because the noncitizen did not advance "an argument concerning section 239(a) as a claims-processing rule, and neither timely objected to the NTA nor claimed any prejudice caused by its omissions," the BIA chose to "leave further consideration

of section 239(a) as a claims-processing rule for another day." ***Id.*** (citations omitted).

The *Nchifor* case concludes that, if a noncitizen first objects to a deficient NTA in a motion to reopen, the noncitizen forfeits that objection. ***Matter of Nchifor***, 28 I. & N. Dec. at 586-89.

Discussing these three cases, *Fernandes* concludes that "the time and place requirement in section 239(a)(1) is a claim-processing rule, not a jurisdictional requirement." ***Fernandes***, 28 I. & N. Dec. at 608. Most importantly, the BIA ruled that it is following its precedent. The BIA chose to "adhere to our view in *Matter of Arambula Bravo*" that "section 239(a)(1) is not a jurisdictional provision." ***Id.*** at 607. *See also **id.*** at 608, 612 (also citing ***Nchifor***, 28 I. & N. Dec. at 588; ***Vargas***, 27 I. & N. Dec. at 753-54). *Fernandes* does not identify specific BIA decisions that it overrules or supersedes about timeliness.

As a claim-processing requirement, section 239(a)(1) is subject to waiver and forfeiture. ***Id.*** at 609. If a noncitizen "does not raise an objection to a defect in the notice to appear in a timely manner, such an objection is waived or forfeited." ***Id.***, *citing **Pierre-Paul v. Barr***, 930 F.3d 684, 693 (5th Cir. 2019). "This guideline would also allow DHS an opportunity to remedy the noncompliant notice to appear before any substantive matters are discussed or determined[.]" ***Id.*** at 610.

Contrary to Morales's view—which echoes the dissent in *Fernandes* that focused on *Rosales Vargas*—*Fernandes* followed prior BIA decisions and was not an intervening precedent. The BIA properly declared that *Fernandes* was not an intervening change in the law that would excuse his forfeiture of an objection to the NTA.

## II.

Morales argues that because the IJ mentioned that he had retracted his admission and concession of the charge of removal and proceeded to resolve

-4-

removability based on the evidence, the IJ accepted the retraction as a timely objection to the NTA. Morales emphasizes that *Fernandes* says that an objection is timely if it is raised before the closing of pleadings. *Id.* at 610. Citing the undisputed facts, he reasons that because the IJ: (1) scheduled later hearings, (2) did not say explicitly on the record that his removability was established, and (3) had not deemed him removable, the pleadings were not closed. On appeal, the BIA did not address this issue. It ruled on the merits, citing 8 C.F.R. § 1240.10 (the regulation about removal hearings).

In removal proceedings, the immigration judge first determines whether the noncitizen is removable from the United States. If the noncitizen is not removable, the proceedings end. If a noncitizen admits the NTA's allegations and concedes removability, the IJ "may determine that the removability as charged has been established[.]" **8 C.F.R § 1240.10(c)**. If the IJ does not accept the admission and concession, the IJ "shall direct a hearing on the issues." *Id.* The immigration proceedings then proceed to the relief phase. *See* ***Matovski v. Gonzales***, 492 F.3d 722, 727 (6th Cir. 2007) ("Removal proceedings against an alien are divided into two phases (1) determination of the alien's removability; and (2) consideration of applications for discretionary relief.").

In his original appearance, Morales, with counsel, admitted the NTA's allegations, and conceded the sole charge of removability. *Fernandes* recognizes the "guideline" that "closing of pleadings" occurs when "substantive matters are discussed or determined[.]" ***Fernandes***, 28 I. & N. Dec. at 610. After Morales's admission and concession, the IJ scheduled four hearings to discuss the substantive matters for his applications for relief from removal, especially his U-Visa eligibility. Morales's case lasted nearly two years in the relief phase where "substantive matters were discussed or determined." *Id.* Thus, pleadings had closed before his retraction.

Morales asserts: "Because 8 C.F.R. § 1240.10(d) requires a decision sustaining the charge of removability as the last act that closes the pleading process,

the pleadings here weren't closed." To the contrary, that regulation does not require an explicit statement from the immigration judge to "determine that removability as charged has been established by the admissions of the [noncitizen.]" **8 C.F.R. § 1240.10 (c)**.

Morales also reasons that since DHS can amend or substitute the allegations or charges in an NTA at any time, pleadings are not closed until the conclusion of the proceeding. True, the regulation provides that if DHS adds or substitutes an allegation or charge, the "alien may be given a reasonable continuance to respond to the additional factual allegations and charges[.]" **8 C.F.R. § 1003.30**. In this case, DHS did not amend or substitute allegations, so Morales's reasoning does not apply.

Through counsel, Morales admitted to DHS's allegations and conceded removability. "Absent egregious circumstances," a distinct and formal admission before, during, or even after a proceeding by an attorney acting in his professional capacity binds the client as a judicial admission. *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (BIA 1986). The egregious circumstances are admissions and concessions that were "the result of unreasonable professional judgment" or "were so unfair that they have produced an unjust result." *Id.* at 383. Because *Fernandes* was not a change in law, it is not an egregious circumstance permitting the withdrawal of the admission and concession. Morales has not alleged ineffective assistance of counsel. There is a strong presumption that a counsel's decision to concede deportability is a reasonable tactical decision. *Id.* at 382. Morales presents no evidence to overcome the presumption. Morales's objections to the NTA occurred after the closing of pleadings, and thus were untimely.

III.

In his motion to reopen, Morales requested a remand to allow the possibility of a negotiated resolution with the DHS. He claims that the BIA distorted his request when it stated:

The respondent also seeks remand to pursue prosecutorial discretion with the DHS. However, the Board lacks the authority to compel DHS to take such action. *See generally Matter of Quintero*, 18 I&N Dec. 348, 349-50 (BIA 1982) (explaining prosecutorial discretion is a function of DHS). Our decision does not affect the respondent's ability to separately pursue prosecutorial discretion with DHS.

The BIA's "compel DHS" response is, in the Government's words, "unartful." However, as both parties agree, the BIA lacks this authority over the DHS. Because Morales could still pursue prosecutorial discretion, the BIA did not abuse its discretion in denying a remand.

\* \* \* \* \* \* \*

The petition for review is denied.

KELLY, Circuit Judge, dissenting.

In <u>Matter of Fernandes</u>, the BIA held for the first time that the requirement in § 239(a)(1) that the NTA specify the time and place of proceedings "is a claim-processing rule, not a jurisdictional requirement." 28 I. & N. Dec. 605, 608 (BIA 2022). The BIA also said that it "will generally consider an objection to a noncompliant notice to appear to be timely if it is raised *prior to the closing of pleadings* before the Immigration Judge." <u>Id.</u> at 610–11 (emphasis added). Relying on this language, the BIA concluded Amador-Morales's objection "was untimely because he filed a motion to terminate [his removal proceedings] based on the missing time and date information after his pleadings were taken by the Immigration Judge." Thus, according to the BIA, his objection was waived.

But <u>Fernandes</u> did not define "the closing of pleadings." <u>See id.</u> So, we do not know how to determine *when* pleadings close in a case like this one, where a

-7-

noncitizen retracts and amends their pleadings before the IJ makes a substantive decision on their eligibility for relief.[1] Moreover, "immigration laws provide little guidance that would help us to choose such a fixed point." <u>Arreola-Ochoa v. Garland</u>, 34 F.4th 603, 608 (7th Cir.), <u>cert. denied</u>, 143 S. Ct. 492 (2022).[2]

In resolving this case, the court here describes removal proceedings as comprised of two distinct phases: the IJ determines removability in one phase and considers eligibility for relief in another. In many cases, the dividing line between removal and relief may be that simple. But, as this case illustrates, that is not always how it works. <u>See</u> <u>Pagayon v. Holder</u>, 675 F.3d 1182, 1190 (9th Cir. 2011) (per curiam) ("[R]emoval proceedings are 'not always neatly divided into pleading and evidentiary stages.'" (quoting <u>Perez-Mejia v. Holder</u>, 663 F.3d 403, 415 n.10 (9th Cir. 2011))).

In Amador-Morales's proceedings, the parties began discussing potential avenues of relief before any pleadings as to removability, suggesting removability and eligibility for relief were being examined concurrently. Then, after admitting to DHS's charges, and exploring and declining to pursue different forms of relief, Amador-Morales suggested to the IJ that his prior voluntary departure order may be

---

[1]<u>Fernandes</u> also left open "[t]he precise contours of permissible remedies" that DHS may request and an IJ may impose upon a petitioner's timely objection. 28 I. & N. Dec. at 616. Thus, if pleadings remained open when Amador-Morales raised his objection, then the appropriate course of action would have been a remand for the IJ to determine an appropriate remedy. <u>See</u> <u>id.</u>

[2]In this pre-<u>Fernandes</u> case, the Seventh Circuit recognized that "a bright-line moment during proceedings at which a claim moves from timely to untimely" was yet undefined, so conducted "a holistic and circumstance-specific analysis of timeliness." <u>Arreola-Ochoa</u>, 34 F.4th at 608–09. It considered the following non-mandatory and non-exhaustive factors: (1) "how much time passed, in absolute terms, between the receipt of the [NTA] and the raising of the objection;" (2) whether "the immigration court set a schedule for filing objections, and did the objection comply with that schedule;" and (3) "how much of the merits had been discussed or determined prior to the objection[.]" <u>Id.</u> at 609.

void due to a defective NTA. See Pereira v. Sessions, 585 U.S. 198, 202 (2018) ("A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule."). Amador-Morales later moved to terminate proceedings based on the missing information on the NTA, and submitted amended written pleadings denying DHS's charges against him. He did so before the IJ considered any potential relief on the merits.

When the IJ ruled on Amador-Morales's motion to terminate, it did not expressly find his amended pleadings, or objection to the defective NTA, untimely. Rather, the IJ simply acknowledged that Amador-Morales had "retracted his admission of the factual allegations and concession of the charge of removal" and had submitted "updated written pleadings." The IJ then considered those amended pleadings and expressly relied on evidence *other than* Amador-Morales's withdrawn pleadings to decide that DHS's allegations had been proven and deny relief. In short, the IJ had not yet made a substantive decision about relief when Amador-Morales objected to the defective NTA and amended his pleadings. Under these circumstances, the record could support a finding that Amador-Morales's objection was timely. Cf. Castillo-Gomez v. Garland, No. 22-1049, 2023 WL 7042544, at *2 (9th Cir. Oct. 26, 2023) (finding objection untimely when it was first raised after the BIA entered a final removal order); Alvarenga-Canales v. Garland, No. 22-3514, 2023 WL 3094545, at *3 (6th Cir. Apr. 26, 2023) (finding objection untimely when it was first raised on appeal).

Amador-Morales asked the BIA to reopen his proceedings to apply Fernandes. However, when the BIA found that his objection to the defective NTA was untimely, it did not address the fact that when he raised the objection, he also withdrew his admission and amended his pleadings, and that this occurred prior to any merits hearing or substantive decision on relief. Thus, even if Fernandes is not an intervening change in the law, that case—and the BIA's denial—left open the question that needs to be answered here: how do we determine when pleadings have closed? Because the BIA has not clarified, we lack guidance for determining when

the pleadings are considered closed in a situation like this one—where the initial admission has been withdrawn and an amended pleading has taken its place.

Our review of the BIA's decision to deny Amador-Morales's motion is deferential, <u>see</u> <u>Payeras v. Sessions</u>, 899 F.3d 593, 596 (8th Cir. 2018), and the unresolved question does not necessarily have an easy answer—at least as to Amador-Morales. But given the unusual procedural record, it was an abuse of discretion to overlook the impact of <u>Fernandes</u> on Amador-Morales's case. And because "the [BIA] can bring its expertise to bear upon the matter," it is properly "place[d] primarily in agency hands." <u>See</u> <u>INS v. Orlando Ventura</u>, 537 U.S. 12, 16–17 (2002) (per curiam). For these reasons, I would grant the petition for review and remand for the BIA to clarify the phrase "the closing of pleadings," and, if appropriate, for the BIA to remand to the IJ for further proceedings.

I respectfully dissent.

_____