# United States Court of Appeals
### For the Eighth Circuit
_____

No. 24-1259
_____

Eva Jazmin Alvizures-Ramirez; Jenny Alvizures-Ramirez

*Petitioner*s

v.

Pamela Bondi, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: February 10, 2025
Filed: June 11, 2025
[Unpublished]
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

PER CURIAM.

Eva Jazmin Alvizures-Ramirez and Jenny Alvizures-Ramirez (collectively, "Petitioners") petition for review of an order from the Board of Immigration Appeals (BIA) upholding an immigration judge's (IJ) order denying their applications for asylum and withholding of removal. We deny the petition.

I. *Background*

Petitioners are sisters and natives of Guatemala who entered the United States in June 2018 without authorization and began living in Nebraska with family members. In August 2018, the Department of Homeland Security served Petitioners with notices to appear and charged them with removability. Petitioners filed applications for asylum and withholding of removal in May 2019. Petitioners claimed that they "suffered past persecution on account of membership in a particular social group, . . . single Guatemalan women without male protection." A.R. 127 (bold omitted).

In support of their applications, Petitioners submitted their own unsworn statements about the events leading to their entry into the United States. Eva alleged that her cousin, Edras, raped her sister, Timotea; threatened to kill Petitioners; and tried to rape Jenny. She said that Petitioners reported the threats to their mother and Timotea—who both lived in Nebraska and encouraged Petitioners to also move to the United States. Eva said that she never reported Edras to the police because Guatemalan authorities are susceptible to bribes. Jenny made largely the same allegations as Eva: She said that Edras raped Timotea, tried to rape her, and threatened to kill Petitioners. She asserted that fear of Edras kept her from leaving home. Petitioners also provided a sworn statement from their aunt and an unsworn statement from Timotea corroborating Petitioners' allegations, news articles about gender-based violence in Guatemala, and the 2019 U.S. State Department Human Rights Report for Guatemala (Report). The Report noted that "[r]ape and other sexual offenses remain[] serious problems" in Guatemala. *Id.* at 212. But, importantly, the report also noted that the Guatemalan "government took steps to combat femicide and violence against women." *Id.* These steps included specialized courts for violence against women, a 24-hour victim service center, and a national alert system for missing women. The Report also said that Guatemala criminalizes violence against women and noted that from January to August 2019, there were over 40,000 instances of violence against women and "the judicial system convicted 1,149 perpetrators." *Id.*

In January 2021, Jenny testified before the IJ. She said that Edras threatened her three to four times over the course of two months. She acknowledged that he never carried out any threat. She again admitted that no one reported the rape or subsequent threats to the police because police "wouldn't do much" and she "heard that other people usually just pay" and then "don't get accused of anything." *Id.* at 111. Jenny testified that while living in Guatemala, Petitioners lived with their father and brother.

The IJ denied Petitioners' asylum applications and ordered their removal. The IJ based its denial on three primary conclusions. First, the IJ held that Edras's threats did "not []rise to the requisite level of harm for persecution" because Petitioners were "never physically assaulted" and the threats were "unfulfilled" and made "over a relatively brief period of time." *Id.* at 58.

Second, even if the harm did rise to the requisite level of persecution, the IJ held that Petitioners could not show persecution on account of a protected ground. Petitioners' proposed social group—"single Guatemalan women without male protection"—was not cognizable "because it lack[ed] immutability, particularity[,] and social distinction." *Id.* (emphasis omitted). The IJ said that the group was not immutable because "[p]eople choose to change their status from being single or in a relationship, and the [Petitioners did] not demonstrate[] that being single is a fundamental characteristic to their identities and conscience." *Id.* at 59. The group was not particular because it was "fairly broad without clear benchmarks, potentially including any woman in Guatemala who is single and without a male protector." *Id.* The meaning of "without a male protector" was unclear as to the Petitioners because they lived with their brother and father in Guatemala yet claimed to lack male protection. *Id.* The group also lacked social distinction because—although Petitioners provided evidence about gender-based violence in Guatemala—they had no evidence demonstrating that "single Guatemalan women without male protection is a group readily identifiable in Guatemala, or suffering from a higher rate of crime or persecution." *Id.*

Third, the IJ held that Petitioners did not show that the Guatemalan government was unable or unwilling to protect them. When, as here, persecution is attributed to a private actor, asylum seekers must show that the government could not or would choose not to protect them. *See id.* (citing *Quinteros v. Holder*, 707 F.3d 1006, 1009 (8th Cir. 2013)). Petitioners feared their cousin, yet they "never sought assistance from the Guatemalan authorities for the crimes done by Edras." *Id.* The IJ acknowledged that the Report said that Guatemala struggled with violence against women but noted that the Report also showed "efforts by the government to combat crimes against women," including criminalizing rape and creating specialized domestic-violence courts. *Id.* at 59–60.

Accordingly, the IJ held that Petitioners did not establish past persecution. This failure also prevented them from establishing a well-founded fear of future persecution because their "future fears [were] the same as their past fears of Edras." *Id.* at 60. The IJ thus denied the asylum applications. As a consequence, the IJ also denied withholding of removal because of its "more stringent standard of proof." *Id.*

Petitioners appealed the IJ's decision to the BIA, and the BIA "adopt[ed] and affirm[ed]" the IJ's decision "only with respect to the [IJ's] finding of a lack of nexus to a protected ground." *Id.* at 2. The BIA noted that it reviews the IJ's findings of fact for clear error and findings of law de novo. It said it "discern[ed] no clear error in the finding of a lack of nexus" between the harm feared and the proposed social group. *Id.* at 3. The IJ, however, did not make a nexus finding. The BIA also addressed Petitioner's proposed social group; agreed that the group "lack[ed] immutability, particularity, and social distinction"; and cited three BIA opinions that the IJ did not cite in its analysis of the issue. *Id.* Further, the BIA "agree[d] with the [IJ's] conclusion [that Petitioners] did not demonstrate the government [was] unable or unwilling to protect them" because they did not report the threats to the police, authorities, or their father. *Id.* Petitioners then filed this petition for review.

-4-

## II. *Discussion*

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Davila-Mejia v. Mukasey*, 531 F.3d 624, 627 (8th Cir. 2008). "We review questions of law de novo, and we review the agency's factual determinations under the substantial evidence standard, reversing only where a petitioner demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner." *De Castro-Gutierrez v. Holder*, 713 F.3d 375, 379 (8th Cir. 2013) (cleaned up).

On appeal, Petitioners challenge the BIA's determination that their proposed particular social group was not cognizable and argue that the BIA erred in applying the incorrect standard of review. We need not address Petitioners' arguments "because Petitioners fail to challenge a determinative issue: whether the [Guatemalan] government inflicted or acquiesced in Petitioners' alleged persecution." *Coreas-Chavez v. Garland*, 52 F.4th 413, 416 (8th Cir. 2022) (holding that a petition for review necessarily failed because the BIA found that the petitioners did not show "that the Salvadorian government [was] unable or unwilling to control the individuals they fear[ed]" and the petitioners did not challenge that dispositive issue and argued that the BIA erred in other ways).

To be eligible for asylum, Petitioners must show refugee status. *See* 8 U.S.C. § 1158(b)(1)(A). "A refugee is a person who is unable or unwilling to return to his or her country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Gutierrez-Vidal v. Holder*, 709 F.3d 728, 732 (8th Cir. 2013) (internal quotation marks omitted). "[P]ersecution requires the asylum applicant to show that the assaults were either condoned by the government or were committed by private actors that the government was unwilling or unable to control." *Matul-Hernandez v. Holder*, 685 F.3d 707, 711 (8th Cir. 2012) (internal quotation marks omitted).

The IJ held that Petitioners did not establish persecution because Edras, a private actor, inflicted the alleged persecution and Petitioners did not show that the Guatemalan government was unable or unwilling to control him. The BIA agreed with the IJ's conclusion on this finding, and both the BIA and the IJ emphasized that Petitioners did not seek assistance from Guatemalan authorities. Petitioners do not challenge this determination in their brief. They have, therefore, waived the argument. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004). This issue is dispositive: Petitioners must show that the Guatemalan government "inflicted or acquiesced" in their persecution to be eligible for asylum. *See Coreas-Chavez*, 52 F.4th at 416. Because they failed to challenge the BIA's determination on this issue, they "cannot show that they suffered persecution and their claims for relief necessarily fail." *Id.*; *see also Arroyo-Sosa v. Garland*, 74 F.4th 533, 543 (8th Cir. 2023) (denying a petition for review because "timeliness of the asylum application [was] dispositive" but the petitioner "failed to challenge before the BIA the IJ's alternative holding that . . . his application was untimely," the BIA found the petitioner waived that argument, and the petitioner "similarly fail[ed] to offer any argument regarding the timeliness of his asylum application before this [c]ourt").

### III. *Conclusion*
Accordingly, we deny the petition for review.

_____